# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 13-cv-00283-WJM

BILLY LEE LONGORIA,

     Applicant,

v.

JAMES FALK, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF *HABEAS CORPUS*

---

Applicant, Billy Lee Longoria, has filed *pro se* an Application for a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254 (ECF No. 1), challenging the validity of his criminal convictions in the Denver County, Colo. District Court.  Respondents have filed an Answer (ECF No. 37), and Applicant filed a Traverse to Answer ("the Reply") (ECF No. 42.)  The Court has determined that it can resolve the Application without a hearing.  28 U.S.C. § 2243; *see also Jeter v. Keohane,* 739 F.2d 257 n.1 (7th Cir. 1984) ("An evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court.")  Having considered the Answer, the Reply, and the state court record, the Court denies the Application.

## I.  BACKGROUND

In 2003 and 2004, Applicant was charged in the Denver County District Court in three separate cases involving ten criminal counts.  (ECF Nos. 10-1, 10-2, 10-3, 10-4 at 3.) The state district court consolidated all three cases for trial.  (ECF No. 10-4 at 4-5.)

In 2005, a jury convicted Applicant on two counts of theft, two counts of burglary of a dwelling, two counts of motor vehicle theft, one count of theft by receiving, and one count of criminal impersonation. (ECF No. 10-4 at 3.) On October 18, 2005, the state district court sentenced Applicant to an aggregate prison term of 117 years. (ECF No. 10-1 at 5; ECF No. 10-2 at 4-5; ECF No. 10-3 at 5-6.)

The Colorado Court of Appeals affirmed Applicant's convictions on direct appeal in *People v. Longoria*, No. 05CA2579 (Colo. Ct. App. April 17, 2008) (unpublished). (*See* ECF No. 10-4.) The state appellate court summarized the relevant facts as follows:

> Defendant committed a series of burglaries and thefts between December 2002 and January 2004. The physical evidence connecting him to the crimes was found either in one of two storage units rented to him or in the hotel room where he was arrested. Other testimony linking him to the crimes was from an ex-girlfriend and from one of the victims.
>
> Defendant was charged by information in three separate cases involving ten distinct criminal counts. In case number 03CR3737, he was charged with one count of second degree burglary arising from his unlawful entry in the home of his former girlfriend and the theft of her day planner which contained cash and credit cards.
>
> In case number 04CR1661, he was charged with (1) one count of theft of $15,000 or more arising from the theft of a semi-trailer that contained a safe with jewelry from a jewelry store, as well as personal belongings of the owners of the jewelry store; (2) one count of second degree burglary and one count of $15,000 or more arising from defendant's unlawful entry into the home of the father of another one of his girlfriends, and the theft of various items, including a motorcycle, tools, and audio and video equipment; (3) one count of first degree aggravated motor vehicle theft arising from the theft of a commercial truck used to transport the safe stolen from the semi-trailer; and (4) one count of theft by receiving based on defendant's possession of a stolen laptop.
>
> In case number 04CR4688, defendant was charged with (1) one count each of burglary and theft of $15,000 or more arising from the break-in of a storage shed owed by D.B.; (2) one count of aggravated

2

motor vehicle theft arising from the theft of a car; and (3) one count of criminal impersonation based on defendant's use of another man's driver's license.

Over defendant's objection, the trial court granted the prosecution's motion to consolidate these three cases because the charges were substantially similar and the evidence involved testimony from common witnesses.  Following a jury trial, defendant was acquitted of the two thefts related to D.B.'s storage shed in 04CR4688, but convicted of the two other counts in that case and all counts in the other two cases.

(*Id.* at 3-5.)

On September 15, 2008, the Colorado Supreme Court denied Applicant's request for *certiorari* review.  (ECF No. 10-6.)  Applicant did not appeal to the United States Supreme Court.  Instead, on January 30, 2009, Applicant filed a motion for reconsideration of sentence, which was denied by the state district court on February 12, 2009.  (ECF No. 10-1 at 3; ECF No. 10-2 at 3; ECF No. 10-3 at 4.)

On December 9, 2009, Applicant filed *pro se* a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c).  (ECF No. 10-1 at 3; ECF No. 10-2 at 3; ECF No. 10-3 at 3.)  The state district court summarily denied two claims on procedural grounds, but ordered the prosecution to respond to Applicant's claim of ineffective assistance of counsel.  (*Id.*)  On July 29, 2010, the state district court denied the ineffective-assistance-of-counsel claim on the merits.  (ECF No. 10-1 at 2; ECF No. 10-2 at 2; ECF No. 10-3 at 2.)  The Colorado Court of Appeals affirmed in *People v. Longoria*, No. 10CA1895 (Colo. App. April 26, 2012) (unpublished).  (*See* ECF No. 10-10.)  On November 27, 2012, the Colorado Supreme Court denied Applicant's petition for certiorari review.  (ECF No. 10-13.)

Applicant initiated this action on February 1, 2013 by filing a *habeas corpus* action.  On June 28, 2013, the Court denied the application and dismissed the action as time-barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).  (*See* ECF No. 12.)  On June 19, 2014, the United States Court of Appeals for the Tenth Circuit reversed the Court's order and judgment of dismissal and remanded for further proceedings, finding that the application was timely.  (*See* ECF No. 30.)  The Court reinstated the case on July 25, 2014.  (*See* ECF No. 32.)  On July 29, 2014, the Court directed Respondents to file an answer addressing the merits of Applicant's ineffective assistance of counsel claim based upon the following three grounds:

> (1) trial counsel failed to question adequately a potentially biased juror candidate who ultimately became the jury foreman;
>
> (2) trial counsel failed to request disqualification of a biased juror during trial or request an alternate be used; and
>
> (3) trial counsel failed to request that the state trial judge recuse himself when it became apparent the judge was partial in the case.

(*See* ECF No. 33; ECF No. 1 at 7-8.)

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of *habeas corpus* may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The Applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the Court must answer under § 2254(d)(1) is whether

the Applicant seeks to apply a rule of law that was clearly established by the Supreme

Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362,

390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the

dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of

5

> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts. *Id*. at 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted). In conducting this

analysis, the court "must determine what arguments or theories supported or . . . could

have supported[ ] the state court's decision" and then "ask whether it is possible

6

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of *habeas corpus* only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B.  *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *Pro se* status does not entitle Applicant to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

## A.  Ineffective Assistance of Trial Counsel

Applicant raises three grounds for his ineffective assistance of trial counsel (IAC) claim.  To prevail, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not

merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).   Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 131 S. Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*  at 697.

In Applicant's state post-conviction proceeding, the Colorado Court of Appeals applied the *Strickland* standard to each of his IAC claims.  (*See* ECF No. 10-10 at 4- 14.)  The Court thus reviews the claims to determine if the state appellate court's decision reasonably applied *Strickland.*

### 1. Failure to question potentially biased juror

Applicant first asserts that trial counsel was constitutionally ineffective in failing to adequately examine a prospective juror who became the jury foreman.  (ECF No. 1 at 7-8.)  Applicant argues that his counsel needed more information to decide whether to exercise a peremptory challenge or a challenge for cause.  (*Id.*)

The state appellate court rejected Applicant's contention on the following grounds:

> During voir dire, Juror R told the court, "At lunch I learned that I actually have a roundabout knowledge of one of the . . . [listed] witnesses."  Juror R was a mortgage broker and the witness was a realtor. Juror R also said that he knew that someone had broken into the witness's car, which was one of the charged offenses.

> The following exchange occurred between the court and Juror R:

THE COURT: The question, at this point, is whether your relationship with him would in any way interfere with your ability to be fair and impartial?

JUROR R: I don't think so . . . I see him probably once a month.

THE COURT: Okay.  And do you socialize with him or anything?

JUROR R: Through business.  We have functions at our work that he and I would be there, but I don't have that pertinent of a relationship with him.  No.

THE COURT: Social relationship?

JUROR R: Yes.

Defense Counsel then asked:

DEFENSE COUNSEL:   When you called back to your business, why did that conversation come up? Why [witness]?

JUROR R: It's – [name], I'm assuming it's not him, but I think he was involved – someone had broken into his car . . .

DEFENSE COUNSEL: If you are chosen to be a juror in this case, do you think your relationship, one way or the other, business or social, would affect your ability to weigh the credibility of him as a witness because you do business with him on a casual basis  - - occasional basis?

JUROR R: Probably not any more than anybody else.  I really don't have a relationship with him.  I only see him periodically through my office.  He probably wouldn't know my last name.  That's the type of relationship.

In response to a question from the prosecutor, Juror R explained that he did not know anything about how the break-in had occurred.

Contrary to defendant's assertion, the record does not show a fiduciary relationship between Juror R and the witness.  *See Brodeur v. Am. Home Assur. Co.,* 169 P.3d 139, 151 (Colo. 2007) ("A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship."  (internal brackets, quotation marks, and citation omitted)).  Further the record also refutes defendant's assertion that Juror R had extrinsic evidence relevant to the case.

Because the relationship between the juror and witness was not close enough to suggest bias, any challenge for cause to Juror R would have failed. *See Carrillo v. People,* 974 P.2d 478, 487-88 (Colo. 1999) (no evidence of bias requiring dismissal of juror who had worked with victim's father and discussed the case with him); *People v. O'Neal,* 32 P.3d 533, 535-36 (Colo. App. 2000) (dismissal of juror whose mother was sister to the grandmother of one of the persons charged in same incident at issue not merited where juror stated the relationship would not affect her and she would weigh all the evidence). Defendant does not suggest what questions could or should have been asked to illuminate further this relationship. *See People v. Mumford,* ___ P.3d ___, ___ (Colo. App. No. 08CA0974, Mar. 18, 2010) ("[N]othing in the juror's written or oral responses would have made his alleged bias plainly apparent."). Hence, defense counsel did not act outside the wide range of professional competence by failing to question him further.

(ECF No. 10-10 at 5-8.)

The state court's factual findings are presumed correct, are supported by the state court record (*see generally* **8/17/05 Trial Tr. (afternoon proceeding**)), and have not been rebutted by Applicant. The Court also finds that the Colorado Court of Appeals' resolution of Applicant's claim did not run afoul of *Strickland* because there is no evidence of juror bias. *See Patton v. Yount,* 467 U.S. 1025, 1035 (1984) (to demonstrate juror bias, a defendant must show that the juror had such a fixed opinion that he or she could not judge impartially). Absent evidence of actual bias, Applicant could not have been prejudiced by trial counsel's failure to challenge the prospective juror for cause. *See Hale v. Gibson,* 227 F.3d 1298, 1319-22 (10th Cir. 2000) (rejecting ineffective-assistance-of-counsel claim because challenged jurors all said, either explicitly or implicitly, that they could "put aside their opinions and judge the case impartially on the evidence"; to demonstrate juror bias, an applicant must show more than the juror's "preconceived notion of guilt;" he must show that the juror "had such a fixed opinion that he or she could not judge impartially").

Applicant also contends that the Colorado Court of Appeals' resolution was improper because it did not hold an evidentiary hearing to ascertain whether Applicant's counsel was ineffective for failing "to adequately conduct an investigation through voir dire in order to have access to complete information so that the <u>choice</u> of whether to exercise a challenge could be made intelligently and effectively."  (ECF No. 42 at 3.) This alleged error focuses only on the State's postconviction remedy and not the judgment which provides the basis for his incarceration.  *See Sellers v. Ward,* 135 F.3d 1333, 1339 (10th Cir. 1998) (petitioner may not challenge state court's denial of post-conviction evidentiary hearing because "no constitutional provision requires a state to grant post-conviction review"); *United States v. Dago,* 441 F.3d 1238, 1248 (10th Cir. 2006) ("challenges to post-conviction procedures fail to state constitutional claims cognizable in a federal habeas proceeding").

Moreover, to the extent Applicant is arguing that his counsel's decision not to ask additional questions of Juror R during voir dire violated *Strickland*, this argument fails as well.  As the record establishes, Juror R was questioned by the court, defense counsel, and the prosecution and his responses established the nature of the relationship and that the juror would not be influenced by the attenuated relationship.  (*See generally* **8/17/05 Trial Tr. (afternoon proceeding)**)).  Moreover, Applicant does not identify what further questions counsel should have asked, or what further information counsel needed to decide upon a peremptory strike.  Under the circumstances, Applicant has failed to overcome the strong presumption that counsel's performance falls within the bounds of reasonable trial strategy.  *See Strickland,* 466 U.S. at 689; *see also DeLozier v. Simmons,* 531 F.3d 1306, 1323 (10th Cir. 2006) (noting that counsel's actions during voir dire "are considered to be matters of trial strategy, which cannot be the basis of an

12

ineffective assistance claims unless counsel's decision is so ill-chosen that it permeates the entire trial with obvious unfairness").  The state courts' conclusion that Applicant failed to demonstrate that counsel acted outside the wide range of professional competence is neither contrary to nor an unreasonable application of *Strickland*.  This claim, therefore, lacks merit and will be dismissed.

### 2.  Failure to request disqualification or replacement of biased juror

Applicant contends that trial counsel was constitutionally ineffective in failing to request disqualification of a biased juror during trial or request an alternate be used. (ECF No. 1 at 8.)

The Colorado Court of Appeals addressed Applicant's argument as follows:

> During trial, the prosecution introduced a pair of overalls found in defendant's hotel room.  One side of the overalls was marked "nite Rentals," which had once read "United Rentals."  (United Rentals was not a victim of the charged offenses.)  The other side had a tag reading "Wally."

> Out of the presence of the jury, Juror Z told the court that he worked for United Rentals and knew an employee there named Wally:

> THE COURT: All right.  Tell me why you brought this to my attention.

> JUROR Z: Well, I just noticed the evidence – and I work near – one of the warehouses where the stuff was stolen from is right next door. I know Wally and I know he's from our company, which is right next door.  And people have easy access into our warehouse because –

> THE COURT: Slow down.  Slow down.

> JUROR Z: People have easy access to our property in our warehouses.  We go 24 hours a day almost seven days a week. Many of times [sic] nothing gets locked up a lot of things get stolen. We've had vehicles stolen and everything else.

> THE COURT: Okay. [Defendant] is not charged with taking Wally's uniform from United Rentals.

JUROR Z: I understand that.

THE COURT: All right.  Is there anything about this exhibit and what we've discussed here that you feel would interfere with your ability to be a fair and impartial juror in – and evaluate the evidence?

JUROR Z: Absolutely not.

Defense counsel asked no additional questions and did not request that the juror be replaced with an alternate.

Because the juror stated unequivocally that nothing about this evidence would interfere with his ability to be fair and impartial, counsel's failure to request that he be replaced does not fall outside the range of professional competence. *See People v. Fears,* 962 P.2d 272, 283 (Colo. App. 1997) (disqualification of juror exposed mid-trial to inaccurate extra-judicial information unnecessary where juror knew the information was inaccurate, "assured the court that it would not affect his impartiality," and "repeatedly affirmed his ability to ignore the information and render an impartial verdict").  And for the same reason, defendant cannot prove prejudice.

Additionally, the trial court explained that the defendant was not charged with taking the overalls, which served the purpose of a limiting instruction.  Hence, the counsel's failure to request an instruction also fails both *Strickland* prongs.

(ECF No. 10-10 at 8-10).

The Court finds that the Colorado Court of Appeals' resolution of Applicant's claim was consistent with *Strickland* because Applicant does not point to any evidence that Juror Z was actually biased against him, or that the alternate juror would not have convicted him, in light of the overwhelming evidence of guilt presented at trial.  *See e.g., Patton,* 467 U.S. at 1035; *Hale,* 227 F.3d at 1319-22.  In short, Applicant fails to demonstrate how he was prejudiced by his counsel's decision not to request a replacement juror.  The Court thus finds that the state appellate court's resolution of his claim was consistent with *Strickland*.  This claim, therefore, will be dismissed.

### 3.  Failure to request recusal of biased state trial judge

Applicant asserts that trial counsel was constitutionally ineffective in failing to

request that the state trial judge recuse himself when it became apparent the judge was

partial in the case.  (ECF No. 1 at 8.)

The Colorado Court of Appeals rejected Applicant's contention on the following

grounds:

> During a pretrial hearing addressing whether the multiple charges
> against defendant should be consolidated, the judge said:
>
>> [F]or what it's worth, last time I handled a situation similar to this
>> where there were allegations of multiple burglaries and the like, I
>> had a Defendant who insisted on trying all of his cases and he went
>> down on all of his cases.  And I think he's doing the functional
>> equivalent of life in prison, and I don't – this guy turned down what I
>> felt and what his attorney felt and the DA felt was a really good deal
>> but he was just – he was just stubborn.  And I think in retrospect he
>> really wanted to go back to the joint.
>>
>> I only say this to encourage you to be realistic.  I don't know
>> anything about the facts of these cases.  But [defense counsel]
>> knows what he's doing and if you guys can work something out, do
>> it; if you can't, I promise you, you will get a trial and I promise you –
>> or more than one trial, and I also promise you I will make sure it's a
>> fair trial.
>
> At the end of the hearing, the judge again told defendant, "[t]alk to
> your attorney and I hope you can get something sorted out here, but I
> meant what I said, if a trial is to occur, I will ensure that it is a fair trial."
>
> . . . .
>
> Here, defendant's assertion that counsel should have sought
> recusal rests solely on the existing record, but the record does not show
> any facts that would support an inference of prejudice.  To the extend
> defendant alleges that these statements sought to "impermissibly bully"
> him into pleading guilty, coercion is distinct from evidence of bias.  And
> because defendant did not enter a plea, coercion, if any, is irrelevant.
>
> Further, the trial judge emphasized that going to trial was
> defendant's choice and that the trial would be fair.  The judge made no
> comment suggesting either prejudgment or defendant's guilty or

premature assessment of defendant's witnesses. *See In re Estate of Elliott,* 993 P.2d 474, 482 (Colo. 2000) (judge prejudged defendant's guilt when stating "[I]t's my belief that you may have stolen property from that estate, and we are going to recover that property," and "You are in an awful lot of trouble with me"); *Estep v. Hardeman,* 705 P.2d 523, 426-27 *(*Colo. 1985) (concluding judge demonstrated bias by telling defendant "I hope this witness is more credible than your other witness"). Under these circumstances, defendant's mere perception of the judge's statements as threatening and therefore revealing bias is not persuasive. *See People v. Owens,* 219 P.3d 379, 386 (Colo. App. 2009) (applying an objective, reasonable person standard to evidence of judicial bias).

Defendant's assertion that erroneous evidentiary rulings against him during trial showed judicial bias and required his counsel to seek recusal is equally unpersuasive. *Longoria I,* concluded that the trial court erroneously admitted "a veritable 'kitchen sink' of evidence" of uncharged conduct that created an inference of guilt, but further concluded that overwhelming evidence of defendant's guilt rendered the error harmless. However, the merits of trial court's rulings, " whether rightly or wrongly decided," are not pertinent to bias or prejudice. *People v. Schupper,* 124 P.3d 856, 859 (Colo. App. 2005), *aff'd,* 157 P.3d 516 ( Colo. 2007). Given the extensive case law applying this principle, we conclude that trial counsel's failure to seek recusal or a mistrial for judicial bias based on these rulings did not fall outside the wide range of professional competence.

Finally, given the division's conclusion in *Longoria I* that evidence of defendant's guilt was overwhelming, and that trial before a different judge presumably would have included admission of this evidence, defendant cannot prove he was prejudiced by his counsel's decision.

(ECF No. 10-10 at 10-14.)

The Colorado Court of Appeals' decision did not run afoul of *Strickland*.

The trial judge's statements did not indicate that the judge was biased against

Applicant. Indeed, the trial judge expressly recognized that he would give

Applicant a fair trial. (*See* ECF No. 10-10 at 11.) Accordingly, defense counsel's

failure to seek recusal of the judge on the basis of these statements and the

judge's rulings did not constitute deficient performance. *See, e.g., Hatch v.*

*Oklahoma,* 58 F.3d 1447, 1458 (10th Cir. 1995) (absent evidence of judicial bias,

counsel's failure to seek recusal of the trial judge did not prejudice applicant at trial); *Baldwin v. Johnson,* 152 F.3d 1304, 1317 (11th Cir. 1998) (absent evidence that recusal was warranted, applicant failed to show either deficient performance or prejudice from absence of a recusal motion).  Because Applicant has not demonstrated that the state courts' determination was unreasonable, this claim will be dismissed.

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254 (ECF No. 1), filed by Billy Lee Longoria, on February 1, 2013, is DENIED and this action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that the Motion to Appoint Counsel (ECF No. 39) is DENIED as moot; the Motion for Evidentiary Hearing (ECF No. 40) is DENIED as the Court has determined that it could resolve the Application without a hearing; and the Motion for Production of State Court Record (ECF No. 41) is DENIED as the entire state court record (*see* ECF No. 38) was filed and reviewed by the Court.  It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith  *See Coppedge v. United States*,

369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the

full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the

United States Court of Appeals for the Tenth Circuit within thirty days in

accordance with Fed. R. App. P. 24.

      Dated this 17th day of October, 2014.

                              BY THE COURT:

                              William J. Martínez
                              United States District Judge